McLAUGHLIN VS. THE ESTATE OF CURTS.

*Redemption by tenants in common of land from foreclosure sale ; right of the tenant redeeming as to contribution from his co-tenant.*

1. Where tenants in common of land have mortgaged it for their joint debt, either of them, on paying the mortgage debt *before* a sale on foreclosure, has a claim against his co-tenant for contribution, capable of being enforced in a personal action, and a lien, to secure the same, upon his co-tenant's interest in the land.

2. *After* a sale on foreclosure for the full amount due, if one tenant redeems from the sale, he still has an equitable lien upon his co-tenant's interest for that portion of the redemption money properly chargeable thereon, but no personal claim against his co-tenant, or against his estate after his decease.

APPEAL from the Circuit Court for *Jackson* County.

*McLaughlin* and one Horatio Curts executed their bond and a mortgage of certain real estate of which they were tenants in common. The mortgage was foreclosed, and the land sold to satisfy it. Subsequent to such sale, *McLaughlin* redeemed the whole land by paying the foreclosure judgment in full, together with the costs and disbursements, and afterward preferred his claim against the estate of his co-tenant, then deceased, for contribution to the amount of one-half the cost of such redemption. The commissioners on claims against said estate disallowed the claim, and *McLaughlin* appealed to the circuit court. Judgment was rendered there for the claimant; from which the administrator appealed.

*Smith & Stark*, for the appellant, argued that all personal liability on the bond and mortgage was extin-

guished as against both of the mortgagors by the act of foreclosure, and as the redemption by *McLaughlin* was purely voluntary, he could enforce no personal claim against his co-tenant Curts, or against his representatives, for contribution, but must be confined to his lien on the land. Adams' Equity, 267; *Nailer v. Stanley*, 10 S. & R. 450, 453–455; 8 Am. Law Reg. (N. S.) 458 (b); *Saunders v. Frost*, 5 Pick. 259, 266–268, 270; *Swaine v. Perine*, 5 Johns. Ch. 482, 491; *Taylor v. Bassett*, 3 N. H. 294; *Russell v. Austin*, 1 Paige, 192; *Osborn v. Carr*, 12 Conn. 195, 211, 212; *Allen v. Clark*, 17 Pick. 47, 57; *Bright v. Boyd*, 2 Story, 605.

*Carl C. Pope*, for respondent, cited in support of the validity of the claim for contribution: *Taylor v. Porter*, 7 Mass. 358; *Stevens v. Cooper*, 1 Johns. Ch. (2d ed.) 430; *Cheesebrough v. Millard*, id. 409; *Campbell v. Mesier*, 4 id. 334; 4 Kent's Com. (11th ed.) 409 and note a; 1 Story's Eq. Jur. (9th ed.) sec. 477; *Green v. Dixon*, 9 Wis. 539.

DIXON, C. J. It is not disputed that the claimant, *McLaughlin*, has a lien in the nature of an equitable mortgage upon the undivided half of the land belonging to the estate of Curts, to reimburse himself for one-half the sum he was compelled to pay in order to redeem the land from the mortgage, or from the foreclosure sale under it. That lien or interest, and the right to pursue the land in equity to enforce contribution, is conceded and even insisted upon by counsel for the estate and administrator, but they contend that such is the claimant's only remedy. And this is the sole question in the case, whether it is his only remedy, or whether the redemption by him, under the circumstances, likewise raised a liability or obligation in the law, personal in its nature, against Curts or his estate, and binding him or his legal representative to repay one-half of the redemption money with

interest as demanded by the claimant in this proceeding. Counsel for the estate argue as if personal liability or obligation on the part of the tenant who does not pay or redeem, and in favor of him who does, could not under any circumstances arise in a case of this kind from the mere fact of payment or redemption by one of the tenants. On the other hand, the counsel for the claimant argues to show that such liability or obligation always arises. It seems to me that neither position is fully or in all cases correct, though I think upon the facts of this case no such liability or obligation arose or was created by virtue of the redemption. If the claimant here had redeemed before foreclosure, or before the sale of the mortgaged premises, which, having been for the full amount of the mortgage debt, interest and costs, completely extinguished all personal liability on the part of Curts, then I think such personal liability and obligation to pay would have existed in favor of the claimant, and could have been enforced against Curts or his estate by some appropriate legal proceeding, and perhaps in this proceeding. Before the sale and the extinguishment of the mortgage debt by reason thereof, the parties stood in the relation of sureties for each other. Each was bound personally for the payment of one-half the debt which the other owed. This obligation existed by virtue of the bond for the payment of the money which both had executed. And besides this, the estate of each in the land was mortgaged and bound for the payment and discharge of the other's half of the indebtedness.

This last circumstance alone would have created the relation of suretyship between them. It was so correctly decided in *Gearhart v. Jordan*, 11 Pa. St. R. 325, where, speaking of the rule of subrogation and the reasons for it, the court say: "For the same reason the rule embraces purchasers in common, of an estate bound by a joint lien. As between themselves,

the purpart of each is liable to contribute only its proportion towards the discharge of the common burden, and beyond this is to be regarded simply as the surety of the remaining purparts.  In this respect they are to be treated as the several estates of joint debtors, one being surety for the other; and, if the purpart of one is called on to pay more than its due proportion, the tenant, or his lien-creditors, is entitled to stand in the place of the satisfied creditor, to the extent of the excess which ought to have been paid out of the other shares."

Now, by reason of the relation of suretyship which thus existed between the parties, I take it to be clear that, if, before foreclosure and sale and before the consequent extinguishment of personal liability upon the bond, the claimant, *McLaughlin*, had redeemed the land or paid the debt secured by the bond and mortgage, he would have been substituted to all the rights and remedies which the mortgagee or holder of the security had as against his co-tenant Curts, or Curts' estate or legal representative.  I think there can be no doubt that in such case the individual liability and obligation at law of Curts to pay his own share of the debt would have survived and been continued to *McLaughlin* and in his favor, so that he could have availed himself of it and have enforced it to the same extent that the mortgagee or creditor could have done, had the security remained in his hands.  It is a familiar principle, and one to which the citation of authorities is unnecessary, that a surety is entitled to *every* remedy which the creditor has against the principal debtor. In *Marsh v. Pike*, 10 Paige, 495, Marsh mortgaged a lot of land to Pike, and afterwards conveyed it to McLean, subject to the mortgage, the amount of which was deducted from the purchase money, and which mortgage McLean agreed to pay off and discharge. McLean conveyed the lot to Towle, subject to the same mortgage and with a like agreement on the part

of Towle to pay off and satisfy it.    The chancellor in his opinion says: "The effect of these several conveyances and agreements is, in equity, to place the complainant in the situation of surety for the payment of the bond and mortgage, and to make the defendants Towle and McLean the principal debtors to him; the first being primarily and the latter secondarily liable to him for the payment of the debt.    The complainant, therefore, if he had paid the bond and mortgage to Pike, would have been entitled to be substituted in Pike's place, *not only* as to the remedy against the land, *but also to the equitable claim against McLean and Towle,* who had agreed to pay off the mortgage."    And to the same effect see also, *Halsey v. Reed,* 9 Paige, 446; *Kinnear v. Lowell,* 34 Me. 299; *Champlin v. Williams,* 9 Pa. St. 341; *Thompson v. Thompson,* 4 Ohio St. 333; *Baker v. Terrell,* 8 Min. 195; *Fletcher v. Chase,* 16 N. H. 42; *Baldwin v. Thompson,* 6 La. 474; *Croft v. Moore,* 9 Watts, 451; and *Ferris v. Crawford,* 2 Denio, 595.    And particularly see *Stroud v. Casey,* 27 Pa. St. R. 471, where two tenants in common made a joint mortgage of their common estate, and then made partition, and the share set off to one was sold at sheriff's sale, and the purchaser at such sale having been obliged to pay the whole mortgage debt, it was held that he was entitled to recover a moiety of the amount *in assumpsit* from the other mortgagor.

If, therefore, *McLaughlin* had redeemed or paid the whole mortgage debt before sale and before Curts' personal liability was extinguished, I think he would have had a valid personal claim against Curts for a moiety of the sum so paid, or, now that Curts is dead, a like valid claim against his estate.    He would have had such claim because being surety for Curts' moiety, he would have succeeded to all the rights of the mortgagee or holder of the mortgage.    And more than this, it would or might have been exceedingly unjust had his situation been otherwise.    Let us suppose, for

example, that the mortgaged premises had been an insufficient security for the payment of the debt, worth, we will say, only one-half the amount; still McLaughlin would have been bound to pay the whole debt; and if, being so bound, he had paid the whole, it would have been manifestly unjust and wrong that he should have been remitted to an equitable lien upon Curts' moiety of the land as the only redress or means of indemnity which the law would have given him. It is obvious that the law would not have sustained such a claim on the part of Curts or his legal representative.

But the case here presented is different; and I have entered into this discussion merely to explain my views with reference to what seem to be the positions respectively taken by counsel. I think here the claimant has lost all personal claim or demand whatsoever against his co-tenant, by letting the premises go to sale on foreclosure, which sale resulted in an entire satisfaction of the debt. By this proceeding his relation as surety had ceased. There was no longer any indebtedness of Curts for which the claimant stood liable, or which he was bound to pay. Curts' moiety of the debt was satisfied by the sale of his moiety of the land, and the redemption thereafter by the claimant did not operate to revive the debt as a personal demand or obligation against Curts or his estate. Allowing the land to go to sale was no more the fault or neglect of one party than of the other; of Curts than of the claimant. Both sustained the double relation of principal and of surety, and one was no more bound to pay or redeem than the other. The sale, when made, extinguished the debt and personal liability of both, and thenceforth they were related as persons severally interested in an equity of redemption, or in lands subject to an incumbrance which neither was personally bound to pay off or remove, and as to which neither was under any duty

or obligation to the other to relieve or protect him or his estate therefrom. It became the common case, so often met with in the reports, where it has been held that the only remedy of the party redeeming is to charge the estate of the other with its due proportion or share of the burden by a suit in equity for that purpose. It was a case justifying the rule laid down in *Gibson v. Grehare*, 5 Pick. 152, and again in *Saunders v. Frost*, id. 266, that "when several are interested in an equity of redemption, and one only is willing to redeem, he must pay the whole mortgage debt; and the others interested in the equity, who refuse to redeem, are not compellable to contribute; for it would be unreasonable to compel a party to redeem, when perhaps it might be for his benefit to suffer the mortgage to be foreclosed." And so it was here at the time the redemption was made. It was optional with Curts, if then alive, or, if not, with his legal representative, to redeem or not, as might be most beneficial to him or his estate. By redeeming himself, the claimant acquired no right to compel Curts or his administrator to do so. He became a mere equitable mortgagee of Curts' moiety of the land to secure repayment to himself of a moiety of the redemption money and interest. He acquired no right of action or of personal demand or claim against Curts or his estate, because none at that time existed either in favor of the mortgagee or of the purchaser from whom he redeemed. On general principles he could not as surety, or in so far as his interest in the land might be regarded as surety for that of Curts, have succeeded to any greater rights, as against Curts or his estate, than the mortgagee or holder of the security or the judgment, and the purchaser, themselves had at the time of redemption; and inasmuch as neither of those parties then had any right of action or personal claim against Curts or his estate, it follows that none was obtained from them by the redemption. Like any other

surety, to the extent that that relation still existed, the claimant acquired the same rights and remedies which the creditor had against the principal, and no other or greater, and could not, by the mere act of paying or redeeming, create a personal liability or obligation where the principal was under none before.

For these reasons, I think the judgment appealed from must be reversed, and the cause remanded for further proceedings in the circuit court according to law.

*By the Court.*—It is so ordered.