Stewart vs. Stewart.

STEWART, Appellant, vs. STEWART, Respondent.

*May 23 — June 20, 1895.*

*Ejectment: Recovery for improvements: Color of title: Discharge of mort-gage: Subrogation: Tenants in common.*

1. A deed which has been adjudged void because never delivered was, nevertheless, up to the time of such judgment, " color of title " within the meaning of sec. 3096, R. S., which provides that the party from whom land is recovered shall be entitled to have the value of improvements made by him " while holding adversely by color of title asserted in good faith, founded on  . . .  any written instrument."

2. Where the grantees in a deed, believing themselves to be the owners of the land conveyed, in good faith paid a mortgage thereon and had it discharged of record, they will be subrogated to the rights of the mortgagee, as against those taking title from their grantor by descent, when their deed is afterwards adjudged void on the ground that it was never delivered.

3. In ejectment by one tenant in common against his co-tenant who had been in possession of the entire premises, holding adversely by color of title asserted in good faith, founded on a deed which, however, is adjudged to be void because never delivered, the defendant was properly allowed to be reimbursed for one half of the moneys paid by him while so in possession to discharge a mortgage on the land, and for taxes, and interest thereon, and also for one half the value of repairs and improvements made by him.

4. Although some of the items allowed in such case were not specifically provided for in secs. 3096–3098, R. S., yet, the allowance being substantially just and equitable, mere technical errors are disregarded.

APPEAL from a judgment of the circuit court for Waukesha county: A. SCOTT SLOAN, Circuit Judge. *Affirmed.*

On February 3, 1860, one Alexander Stewart, being the owner and in possession of the forty acres of land in question, made an ordinary warranty deed of the same, running to two of his nephews, both sons of his deceased brother Archibald, to wit, the defendant, *Archibald Stewart*, and his brother, James A. Stewart. Said James A. and said *Archi-*

*bald* went into possession of said premises under said deed at the time of its execution.   Said real estate was very stony and rough, and at that time there was a mortgage thereon to one Mullens, for $500, drawing interest at the rate of ten per cent. per annum, given in 1856 and recorded February 3,.1860.   On September 23, 1862, the said grantees named in said deed, *Archibald* and James A. Stewart, believing that they were the owners of said real estate, paid in good faith $500 on the said mortgage, and by.reason of such payment obtained a satisfaction piece therefor, and also paid the taxes upon said real estate which were assessed thereon from 1860 up to and including 1873.

On March 7, 1873, the said Alexander Stewart died intestate, leaving, him surviving, as his sole heirs at law, the said *Archibald* and James A., as children of his deceased brother Archibald, and the plaintiff, *John Stewart*, and his brothers and sisters, as the children of his deceased brother John.   On March 8, 1873, the said *Archibald* and James A. caused said deed of February 3, 1860, to be recorded.   Thereupon said *John* and his brothers and sisters, as such heirs at law, filed a bill in equity against the said *Archibald* and James A., to set aside said deed and the record thereof.   As the result of that suit it was adjudged, June 12, 1879, that said deed was never delivered, and hence the same and the record thereof were set aside and canceled.   *Stewart v. Stewart*, 41 Wis. 624; *S. C.* 50 Wis. 445.

Prior to the commencement of this action said *Archibald* purchased of his said brother, James A., all the right, title, and interest that said James A. had in and to said premises, and said *John* purchased of his brothers and sisters all the right, title, and interest they had in and to said premises. On May 27, 1891, the said *John*, as such heir at law and such purchaser, commenced this action of ejectment against the said *Archibald* to recover an undivided one-half of said premises.   The complaint is in the statutory form.   The de-

fendant answered by way of denials, adverse possession, claim of title in good faith under said deed, and for improvements and betterments made upon the premises in good faith, by way of equitable counterclaim. The plaintiff replied to said counterclaim. As the result of that litigation, it was held that the former judgment was conclusive upon the parties; that said deed of February 3, 1860, was never delivered; and that the plaintiff and defendant held the premises as tenants in common. *Stewart v. Stewart*, 83 Wis. 364.

Thereupon, *Archibald Stewart's* claims for improvements and betterments were tried, and at the close of the trial, February 8, 1894, the circuit court found, as matters of fact, among other things, that said *Archibald Stewart* has remained in the possession of said premises from the time his uncle Alexander died, up to the present time, under a firm faith and belief that he was the owner of said premises, and in good faith improved said premises, and paid all the taxes assessed thereon, and also built and repaired fences, dug up stones, and cleared said lands from stones and stumps, also destroyed large patches of noxious weeds, Canada thistles, etc., hauled and spread large quantities of manure upon said premises, so that the same became quite valuable, and that the clearing of stones and stumps off from said lands, and also the improvements, were done prior to 1879; that the improvements by way of fences and clearing up of stones, etc., are reasonably worth the sum of $200, without taking into consideration the destruction of noxious weeds or the hauling and spreading of manure as aforesaid; that the destruction of weeds and hauling and spreading of manure does not come within the statute; that *Archibald's* claim for interest upon taxes paid by him is only allowed at seven per cent. per annum; that at the time of the death of said uncle the said *Archibald* and his brother James had expended on said real estate, by way of paying off the mortgage and taxes, and interest upon the same, the sum of $1,037.20, and that the

taxes and interest upon the premises since 1873, up to the present time, have been paid by said *Archibald;* that a fair rental value of said premises during said period, taking into consideration the improvements made by the said *Archibald* since 1873, is $66 a year, making $1,386 since 1873 to January 1, 1894, and that said *Archibald* has cut wood on said premises, and used or sold the same, to the amount of thirty cords, and the same was reasonably worth $2.50 per cord; that said *Archibald* has kept possession of said real estate in good faith, believing that he was the owner thereof, and made the improvements mentioned, for which he should be paid one half, and as an offset against the same should be allowed one half of the rental value of said real estate, and one half of the wood disposed of, and all damages and costs in the ejectment action. And the court states the account between these two parties so as to strike a balance in favor of the said *Archibald,* and against the said *John,* of $631.32, for which said sum the said *Archibald* should have judgment and a lien upon the interest the said *John* has in said real estate.

And, as conclusions of law, the court finds that the judgment in the action of ejectment should be a conditional one, declaring that the said *John* pay to the said *Archibald* the sum of $631.32 within the time required by statute and as a condition precedent to execution in the action for ejectment, and that said sum of $631.32 so assessed and established for improvements be a lien upon the said real estate, and that said amount should be paid, with interest thereon at six per cent. per annum from August 30, 1893. From the judgment entered thereon accordingly, with costs, the said *John* appeals.

For the appellant there was a brief by *Carney, Clasen & Walsh,* and oral argument by *E. D. Walsh.*

For the respondent there was a brief by *Chafin & Parkinson,* and oral argument by *E. W. Chafin.*

CASSODAY, J.   Upon the former appeal in this case it was·
fully determined that the decree in the equity suit, entered
June 12, 1879, and affirmed by this court (50 Wis. 445), to·
the effect that the deed of February 3, 1860, was never in·
fact delivered, and that the plaintiff in this action of eject--
ment, commenced May 27, 1891, and the defendant, are ten-
ants in common, each owning an undivided one-half of the·
premises, was conclusive.   83 Wis. 364.   The questions now
presented for consideration are as to the amount, if any-
thing, the defendant, *Archibald*, should be allowed for im--
provements and expenditures, on his accounting for rents,
issues, and profits during the many years that he and his
brother, James A., were in possession. ·

1. Notwithstanding such conclusiveness of the decree in
the equity suit, we are constrained to hold that the findings·
to the effect that James A. and *Archibald* were in possession
of said premises, holding the same adversely by color of title
asserted in good faith, founded on a written instrument,.
to wit, the deed of February 3, 1860, from the time they so
entered, down to the rendition of said decree, is supported·
by the evidence, within the meaning of secs. 3096–3098, R. S.
By such color of title is included a tax deed void upon its·
face.   It also includes a tax deed void for reasons going to·
the groundwork of the tax or assessment upon which such
deed is issued.   *Zwietusch v. Watkins*, 61 Wis. 620.   Such·
holding adversely is only to be by color of title thus *as-
serted in good faith*, and such color of title may be by a writ-
ten instrument having an infirmity making it absolutely void.
upon its face.   *Ibid.*   Otherwise, the statute would rarely
afford any protection.

2. The mortgage upon the premises was paid by James A.·
and *Archibald* prior to the death of the uncle, but the cir-
cumstances under which it was so paid and discharged, as·
found, were such as to entitle them, in equity, to be subro-
gated to the rights of the mortgagee, even as against the·

uncle; and certainly the equities in their favor are as strong, if not stronger, as against those who have taken title from him by descent. *Morgan v. Hammett*, 23 Wis. 30; *Blodgett v. Hitt*, 29 Wis. 169; *Levy v. Martin*, 48 Wis. 198; *Jones v. Parker*, 51 Wis. 218; *Carey v. Boyle*, 53 Wis. 574; *Wilton v. Mayberry*, 75 Wis. 191; *Baker v. Baker*, 2 S. Dak. 261. In several of these cases, as here, the mortgage was discharged of record, but equity kept it alive for the purpose of doing justice and enforcing good conscience between the parties. Having in good faith paid the mortgage while thus in possession, James A. and *Archibald* should, in equity, be regarded as having thereby acquired an interest in the premises commensurate with the amount of money so paid.

3. As indicated in the opinion of Mr. Justice PINNEY on the former appeal, the decree of June 12, 1879, conclusively determined that the parties were tenants in common in the land, and that since that date, at least, their respective rights as to this land are such as grow out of their relationship as tenants in common. Since the statute of Anne, which became a part of the common law of this country, the right to maintain an action for accounting for rents, issues, and profits has generally, if not uniformly, been recognized in the United States. In this state that statute has been, in effect, re-enacted and extended. R. S. secs. 2199, 3082, 3173, 3192. In such actions this court has repeatedly sanctioned the right of the tenant in possession to be allowed, in such accounting, to be reimbursed for moneys expended in payment of taxes and extinguishing liens upon the common property. *McLaughlin v. Curts' Estate*, 27 Wis. 644; *Frentz v. Klotsch*, 28 Wis. 312; *Hannig v. Mueller*, 82 Wis. 243, 244, and cases there cited. So the tenant in common in possession may, in an ejectment suit, be allowed to set off the value of necessary repairs and permanent improvements. *Davis v. Louk*, 30 Wis. 308; *Clark v. Plummer*, 31 Wis. 442; *McCrubb v. Bray*, 36 Wis. 333. So the tenant

making such expenditures has been allowed to enforce con-
tribution in an action of assumpsit or for an accounting.
*Gwinneth v. Thompson*, 9 Pick. 31; *Wheeler v. Wheeler*, 111
Mass. 247; *Ruffners v. Lewis's Ex'rs*, 7 Leigh, 720; *S. C.* 30
Am. Dec. 513.   Such contribution has also been enforced in
actions for partition.   *Robinson v. McDonald*, 11 Tex. 385;
*S. C.* 62 Am. Dec. 480, and notes; *Western v. Skiles*, 35 Fed.
Rep. 674.   The proceeding in the case at bar to enforce
contribution is equitable in its nature, and hence the prin-
ciples mentioned are peculiarly applicable.   Applying those
principles to this case, and we must hold that the defendant,
*Archibald*, was properly allowed to be reimbursed for one
half the moneys paid by him and his brother, James A.,
while in possession, on account of the mortgage, taxes, and
interest thereon, and for one half the value of the repairs
and improvements made by them or either of them.   While
some of the items allowed are not specifically provided for
in secs. 3096–3098, R. S., yet, upon the broad principles of
equity mentioned, the allowances made to the respective
parties are substantially just and equitable, and mere tech-
nical errors, therefore, are to be disregarded.   R. S. sec.
2829.

*By the Court.*— The judgment of the circuit court is af-
firmed.